UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | DOCKET NO. 3:17cr175-RJC |
| v. | **BILL OF INFORMATION** |
| | Violations: |
| | 18 U.S.C. § 1343 |
| **TIMOTHY EDWIN SCRONCE** | |

THE UNITED STATES ATTORNEY CHARGES:

At the specified times and at all relevant times:

1. From in or about April 2012 through in or about December 2012, the defendant, TIMOTHY EDWIN SCRONCE, engaged in a scheme to defraud by using false accounting entries to inflate the value of his private telecommunications companies (collectively, "TelWorx") during a sale of TelWorx to a public company ("Company A"). After the sale was complete and SCRONCE became an employee of Company A, he tried to conceal the inflation through additional false accounting entries and other lies. SCRONCE's scheme caused Company A to substantially overpay for TelWorx.

2. SCRONCE was a resident of Winston-Salem, North Carolina, and the majority owner and CEO of TelWorx, which was headquartered in North Carolina. After the sale of assets to Company A, SCRONCE became a Vice President of Company A and continued to run the day-to-day operations of his former companies at Company A until he resigned on or about December 19, 2012.

### The Scheme to Defraud

3. In the first and second quarters of 2012, Company A and SCRONCE engaged in negotiations for the sale of TelWorx's assets to Company A. Company A relied, primarily, on TelWorx's earnings before interest, taxes, depreciation, and amortization ("EBITDA") to determine the price it would pay to acquire the assets. Ultimately, Company A paid a multiple of TelWorx's purported EBITDA as represented to it by SCRONCE.

4. SCRONCE understood that by artificially increasing TelWorx's EBITDA, he would cause Company A to increase the price it paid for TelWorx's assets.

1

5.      On or about April 2, 2012, SCRONCE emailed his outside accountant and stated, in part, "[Company A] (publicly traded) want to buy (very badly) … TelWorx…. I need the ebitda…."

6.      That same month, SCRONCE directed TelWorx's controller (the "Controller") to make a false entry in TelWorx's general ledger that improperly inflated the value of certain obsolete telecommunications equipment ("the Modules"). Prior to this entry, TelWorx carried the Modules at a value of $0. After the fraudulent entry, which was backdated to November 2011, TelWorx carried the Modules at a value of approximately $213,000.

7.      The false entries in TelWorx's general ledger fraudulently inflated the value of TelWorx's inventory and improperly caused a material increase of its EBITDA by $213,000.

8.      SCRONCE then caused TelWorx to provide Company A with financial information that included these overstatements, knowing that Company A would use them to formulate its purchase price of TelWorx's assets.

9.      On or about July 9, 2012, Company A and SCRONCE reached an agreement whereby Company A acquired TelWorx's assets for a total of approximately $16.5 million, consisting of $16 million in upfront cash and $500,000 in cash that was escrowed, and a potential $1.5 million bonus based upon Company A's future performance. At least $550,000 but less than $1.5 million of the purchase price was attributable to the overstatement of EBITDA caused by SCRONCE's fraudulent scheme.

10.     After the acquisition, in or around the middle of the third quarter of 2012, Company A began performing inventory valuation testing of the assets it acquired from TelWorx, which would have included testing the Modules whose value SCRONCE directed the Controller to inflate prior to the acquisition.

11.     In order to conceal this fact from Company A, SCRONCE told the Controller, whom also had joined Company A, that he planned to purchase the Modules himself. Even though SCRONCE was the purchaser, he subsequently instructed the Controller to make false entries in Company A's book and records showing an order for the Modules falsely naming one of Company A's vendor, a telecommunications company located in Taiwan ("Vendor A"), as the purchaser.

12.     SCRONCE also instructed the Controller to create a bogus invoice for this false order and enter it into Company A's books and records. As a result, on or about September 18, 2012, the Controller entered additional false entries in Company A's books and records and caused Company A to improperly recognize revenue on the purchase.

13.     In late September 2012, SCRONCE paid approximately $200,000 to pay off the fake invoice to Vendor A, but he concealed from Company A the fact that he had purchased the Modules himself. In addition, SCRONCE caused the Modules that he had purchased to be stored in a warehouse rather than shipped to Vendor A per the terms of the invoice.

14. In or about early December 2012, Company A asked the Controller to provide it with all of the records concerning Vendor A's order of the Modules. Because it was a bogus order, most of the requested records, such as the purchase order and shipping records, did not exist.

15. In order to conceal the fact that Vendor A's order was bogus, SCRONCE instructed the Controller to request certain records for Vendor A's order by email from another employee of Company A that also had previously worked at TelWorx ("Employee B").

16. On or about December 13, 2012, the Controller emailed Employee B as SCRONCE instructed. Knowing that that the requested records did not exist, SCRONCE created several false records concerning Vendor A's order and provided them to Employee B. He then directed Employee B to email the records and other false information concerning Vendor A's order to the Controller, which she did on or about December 14, 2012. Later that day, the Controller emailed the false information to Company A.

17. Notwithstanding SCRONCE's efforts to conceal his fraudulent scheme, Company A discovered the false entries relating to the Modules and confronted SCRONCE on or about December 14, 2012. He initially falsely denied knowing anything about the issues with the Modules but subsequently admitted to purchasing them, although he failed to disclose that he had instructed the Controller to inflate the value of the Modules prior to the acquisition.

## COUNT ONE
### (Wire Fraud)

18. The United States Attorney realleges and incorporates by reference herein all of the allegations contained in paragraphs 1 through 17 of this Bill of Information, and further alleges that:

19. From in or about April 2012 through in or about December 2012, in Mecklenburg County, within the Western District of North Carolina and elsewhere, the defendant,

**TIMOTHY EDWIN SCRONCE**

and others known and unknown to the United States Attorney, aiding and abetting one another, with the intent to defraud, did knowingly and intentionally devise the above-described scheme and artifice to defraud and obtain money by materially false and fraudulent pretenses, representations, and promises, and, for the purpose of executing such scheme and artifice to defraud, did cause to be transmitted by means of wire communication in interstate commerce the following writings, signals, and sounds, to wit, the defendant, caused the above-described emails to be sent and caused Company A to send wire transfers on or about July 9, 2012 as part of Company A's purchase of TelWorx's assets.

All in violation of Title 18, United States Code, Sections 1343 and 2

3

JILL WESTMORELAND ROSE
UNITED STATES ATTORNEY

_____
DANIEL RYAN
ASSISTANT UNITED STATES ATTORNEY